
FILED
MAY 15 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTYANNA POHLMANN, an individual,<br><br>                                         Plaintiff,<br>v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>                                         Defendant. | Case No.: 3:16-CV-00700-MMA-KSC<br><br>**REPORT AND RECOMMENDATION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Doc. Nos. 16, 20]** |

      Pursuant to Title 42, United States Code, Section 405(g), of the Social Security Act ("SSA"), plaintiff filed a Complaint to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits.[1] Pursuant to Title 28, United States Code, Section 636(b)(1)(B), and Civil Local Rules 72.1(c)(1)(c) and 72.2(a), this matter was assigned to the undersigned Magistrate

---

[1] Title 42, United States Code, Section 405(g), provides as follows: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive."

Judge for a Report and Recommendation.

Presently before the Court are: (1) plaintiff's Motion for Summary Judgment [Doc. No. 16]; (2) defendant's Cross-Motion for Summary Judgment [Doc. No. 19]; (3) defendant's Response in Opposition to Plaintiff's Motion [Doc. No. 20]; (4) plaintiff's Reply to defendant's Opposition [Doc. No. 21]; and (5) the Administrative Record [Doc. No. 9.]. After careful consideration of the moving and opposing papers, as well as the Administrative Record and the applicable law, this Court **RECOMMENDS** that the District Court remand the case for further consideration by the Commissioner pursuant to the "fourth sentence" of Section 405(g) and enter a final judgment. *Melkonyan v. Sullivan*, 111 S.Ct. 2157 (1991); *Sullivan v. Finkelstein*, 110 S.Ct. 2658 (1990).

I.  ***Background and Procedural History***.

On March 24, 2014, plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") alleging disability beginning January 1, 2011. [AR 155-156.] Plaintiff's application states that she was born on July 29, 1979. She said in her application she was unable to work due to (1) severe migraines; (2) depression; (3) post-traumatic stress disorder ("PTSD"); (4) Unilateral Pars Defect in her spine; and (5) stress incontinence. [AR 98.] On May 21, 2014, the Commissioner denied plaintiff's application for DIB. [AR 92-94.] Plaintiff requested reconsideration on July 14, 2014 [AR 95], but her request was denied on October 20, 2014. [AR 98-102.] On October 31, 2014, she requested a hearing before an administrative law judge (hereinafter "ALJ"). [AR 103-104.] A hearing before an administrative law judge was held on May 27, 2015. [AR 35-64.]

On September 16, 2015, the ALJ issued a written opinion concluding that plaintiff did not qualify for DIB under the SSA. [AR 21-30.] In reaching this decision, the ALJ found that plaintiff has the severe impairments of "history of pars defect at L5-S1 of the lumbar spine; history of migraine headaches; history of herniated disc thoracic spine; alcohol dependence; and depression/mood disorder." [AR 23.] However, the ALJ concluded she did not have an impairment or combination of impairments that meet SSA disability criteria and, as a result, would have the residual functional capacity to perform a

full range of light work with no sustained interaction with supervisors, coworkers and the public. [AR 23-28.]

On November 13, 2015, plaintiff requested review of the ALJ's decision by the Appeals Council. [AR 15-17.] However, on January 27, 2016, the Appeals Council denied plaintiff's request for review. [AR 1-3.]

## II. *Standards of Review*.

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The Court must weigh both the evidence that supports and detracts from the administrative ruling. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may 'look no further than the pleadings and the transcript of the record before the agency,' and may not admit additional evidence. *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D.Tenn.1978); 42 U.S.C. § 405(g). "[A]lthough summary judgment motions are customarily used [in social security cases], and even requested by the Court, such motions merely serve as vehicles for briefing the

parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Kenney v. Heckler*, 577 F.Supp. 214, 216 (D.C. Ohio 1983).

### III. *Medical Evidence.*[2]

#### A. *Disability Determinations by the Department of Veterans Affairs*.

The record includes medical records from the Department of Veterans Affairs indicating that plaintiff was a veteran of the Gulf War Era and that she served in the Navy from December 19, 2000 to March 1, 2006. [AR 153.] The record contains three disability rating decisions from the Department of Veterans Affairs. [AR 484-497, 498-505, 506- 523.]

In a decision dated April 19, 2013, from the Department of Veterans Affairs, plaintiff's overall service connected disability rating was 100%. [AR 486.] The Department of Veterans Affairs' decision was based on an overall assessment of plaintiff's service connected conditions. [AR 485-486.] Plaintiff's service connected disability for her sciatic nerve in her left and right legs with pars defect L5-S1 (sometimes also referred to as a "unilateral pars defect L5-S1") was increased from 10% to 20%, effective October 30, 2012. [AR 484-486, 491-92.] Plaintiff's service connected disability for her major depressive disorder was increased from 50% to 70%, effective October 30, 2012. *Id.* Plaintiff's service connected condition of migraine headaches was found to be 30% disabling. [AR 486.]

In a decision dated November 26, 2013, from the Department of Veterans Affairs, plaintiff received a determination that her "stress incontinence" was 60% disabling. [AR 498-503.] The "reasons for decision" were as follows: (1) plaintiff was required to wear "absorbent materials which must be changed more than four times per day;" (2) plaintiff

---

[2] The instant dispute concerns only whether the ALJ properly evaluated and/or addressed plaintiff's overall service connected disability rating from the Department of Veterans Affairs. [Doc. No. 16, at pp. 6-17; Doc. No. 20-1, at pp. 6-16; Doc. No. 21, at p. 3.] Accordingly, a summary of plaintiff's disability determinations by the Department of Veterans Affairs are summarized herein. The Court refers to specific evidence from the record where pertinent to the Court's analysis in the Discussion section of this Order.

4

was waking up "to void five or more times per night;" and (3) plaintiff's "daytime voiding interval [was] less than one hour." [AR 503.]

In a decision dated March 3, 2014, from the Department of Veterans Affairs, plaintiff's overall service connected disability rating remained at 100%. [AR 148.] However, her disability rating for her evaluation of migraine headaches was increased from 30 percent disabling to 50 percent disabling, effective October 30, 2012. [AR 153-154.] In its determination, the Veterans Administration states:

> Evaluation of migration headaches, which is currently 30 percent disabling, is increased to 50 percent effective October 30, 2012, the date we received your claim based on continuous prosecution. The overall disability picture demonstrates a level of functional impairment that more approximates that which is contemplated in the 50 percent evaluation criteria. An evaluation of 50 percent is assigned for very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability.
>
> At the VA exam, you reported migraines 3-5 times per week with nausea, vomiting, changes in vision, and photo and phone sensitivity. The examiner noted there is evidence of very frequent prostrating and prolonged attacks of migraine headache pain, [sic] You reported missing 48 days from school in the past 12 months due to migraine headaches.

[AR 154.]

### B. *May 27, 2014 Hearing Before the ALJ.*

#### 1. *Plaintiff's Testimony.*

At the hearing, plaintiff testified that she was 35 years old, and had completed some college. [AR 38.] She testified that she had three children, two of whom lived with her. *Id.* Plaintiff testified that regarding her history with drug or alcohol problems, she had one "DUI" in 2013 but "since then [she hasn't] used alcohol." [AR 38; AR 48.] She also testified that she was using medical marijuana, but she had abstained from using it for the last month. [AR 38; AR 48.]

At the hearing, the ALJ noted as follows: "You're 100 percent VA disability, and you've got SSDI here. What is that?" [AR 39.] Plaintiff explained that she was originally approved for Social Security Disability, but then she filed an appeal regarding the date of onset. *Id.* Plaintiff said that she was currently receiving disability benefits, but understood that she may have to repay them. *Id.*

Plaintiff testified that she earned a pharmacy technician certification in 2013. [AR 39-40.] She said that in obtaining the certification, she "had many absences due to [her] illnesses," but the school worked with her to help her graduate. *Id.* Plaintiff testified that she was in the Navy for six years. During that time, she was stationed in Camp Pendleton as a hospital corpsman, and she also did many field operations with the Marines. [AR 40-41.] She testified that left the Navy on a pregnancy discharge because she was "going through [her] divorce and pregnant with [her] third child." [AR 40.]

The ALJ asked plaintiff about what medications she took on a daily basis, noting that she had "quite a few pain meds" listed on her medical records. [AR 40.] Plaintiff testified that she took them "all every day for [her] back and/or [her] migraines." *Id.* The ALJ asked plaintiff when she started having physical problems. *Id.* Plaintiff testified that she "was first diagnosed with the migraines when [she] was in boot camp which was in March of 2001." [AR 41.] She further testified that she injured her back in approximately 2002, and then it just progressively became worse after that when they eventually discovered she had a fracture referred to as pars defect. *Id.* The ALJ asked plaintiff about how she fractured her back, and plaintiff said that she was not sure. *Id.* Plaintiff further explained that she is "pretty petite, and [she] was having to carry pretty heavy packs," so it may have been the stress on her back from that. *Id.* She also noted that she has a herniated disc in her back. *Id.* The ALJ asked plaintiff how she got the herniated disc, and plaintiff said that she was not sure. *Id.* She explained generally that "[t]he military was pretty rough on [her] body." *Id.*

The ALJ asked plaintiff how she cares for her two children, and plaintiff explained that she "get[s] help a lot of the time." [AR 41.] Plaintiff testified that she receives help

6

with her children from the following people: (1) a caregiver/friend named Shanna Dodson; (2) a neighbor, Steve Millot; (3) plaintiff's mother; and (4) her children's sports coaches with transporting them to activities. [AR 41.] Plaintiff explained that she "spends many days in bed so it's tough." *Id.* Regarding her migraines, plaintiff testified that at the time of the hearing, she was experiencing them daily. *Id.* Plaintiff said that she used to get migraines about three to five times a week, but then approximately six or seven months ago, she started experiencing them daily. *Id.* Plaintiff further testified that her migraines began around the time of her enlistment with the Navy and that she had to miss a lot of duty. [AR 43.] She said that her migraine medications generally prevent her from driving because it causes her photosensitivity, and it can also make her irritable, constipated, and nauseous. *Id.* When the ALJ asked plaintiff whether the migraines were the most serious issue she has, she said that "it's a tie between that and [her] back." *Id.*

Regarding her back pain, plaintiff testified that she had not had an MRI since she was on active duty when they discovered her herniated disc. [AR 44.] She testified that she had asked her doctor for it, but they denied it. *Id.* However, she explained that she had an appointment with neurology one month after the hearing "to explore the option of getting an MRI and also some type of pain injections in her back." *Id.* Regarding medical issues that affect plaintiff's ability to work other than migraines and back problems, plaintiff testified that she had PTSD, depression, anxiety, and stress incontinence. [AR 44.] Plaintiff explained that the medication that she takes for depression "helps a small bit" and that she would "rather take it than not take it." [AR 46.]

When the ALJ asked plaintiff what she does during the day, she said that she spends almost every day in bed. *Id.* The ALJ asked her whether she did that every day, and plaintiff said yes, "some days it's hard to even shower." *Id.* When the ALJ asked plaintiff whether she does any physical exercise, she said "very seldomly." [AR 47.] She said that she sometimes tries to go for a walk, but then she ends up in more pain. *Id.* Plaintiff testified that in the past she has belonged to a gym, in order to walk on the treadmill, and for the tanning and massage services. *Id.* The ALJ asked plaintiff how recently she went

7

to the gym. *Id.* Plaintiff said that she went to the gym "last week just to get on the treadmill and try to get a little exercise because the doctors have said that if I can try to get a little movement it's better than nothing. . . . But I'm usually not getting more than few minutes on the treadmill before it starts to really bother my lower back." *Id.* at 47-48.

After the ALJ finished his initial examination of plaintiff, plaintiff's attorney questioned her. Plaintiff's attorney asked her about the disability rating(s) she received from the Department of Veterans Affairs. [AR 49.] Plaintiff testified that her disability rating was for her sciatica, headaches, tinnitus, stress incontinence (which she believed was listed as chronic cystitis), depression, and her back issues. [AR 49-50.] Plaintiff's attorney asked her how long her disability rating from the Department of Veterans Affairs has been at 100 percent. [AR 50.] Plaintiff testified that she has been at 100 percent disability rating since 2012. *Id.* Plaintiff's attorney asked her about whether she has experienced difficulty with fainting episodes. *Id.* Plaintiff testified that she has had several fainting episodes and that they happen every four to six months. *Id.* She testified that she does not know what causes the fainting, but she "tie[s] it to [her] migraines." *Id.* Plaintiff also testified that since 2013, she has been getting Botox injections for the headaches every ten to twelve weeks, which help "take the edge off for a few weeks." *Id.* at 50-51. Regarding her work history, plaintiff testified that her last full time job was in June 2009, and then she had a consistent part-time job until January 2011, when she was fired for having migraines and calling out sick. *Id.* at 51.

The ALJ then asked plaintiff details of her work history, starting with her employment with Fairway Enterprises as an administrative assistant for a physical therapy office from August 2007 until June 2009. [AR 52.] She said she left the job "because of difference of view with [her] boss and her threatening to fire [her] over [her] migraines." [AR 52.] At J.C. Penney, plaintiff worked as a shoe associate; then she was an administrative assistant for Braden Partners LP, Pacific Pulmonary Services. [AR 52.] She also worked at San Diego Digestive Services, where she did "check out and scheduling of patients." [AR 53.] She also worked early on in her career at Macy's and subsequently at

Money Mailer. The ALJ asked plaintiff why she wanted to be a pharmacy technician and get out of the medical assistant role. [AR 55.] Plaintiff said she wanted to try something new and was still entitled to military benefits to go to school. *Id.* However, plaintiff explained that in pharmacy technician school, she was required to go to school four hours a day, but she missed a lot of school due to her migraines. *Id.*

The ALJ also asked plaintiff about her "stress incontinence." [AR 60.] Plaintiff mentioned that she starting using pads for it in 2006, after the delivery of her third child. [AR 61.] The ALJ asked plaintiff whether she received any medication for it, and plaintiff said she did not. *Id.* Plaintiff testified during the hearing that:

> It's just a little confusing to me because I was – I'm 100 percent disabled through the VA, and when I originally did my application for Social Security benefits I was approved. We went to appeal the date of onset because they had changed my date of onset, and that's when they came back saying that I was overall denied. So that's just a little confusing to me that they would right off the bat say, 'Yes, you're disabled. We agree with the VA,' and then come back and change their decision.

[AR 62.]

The ALJ responded that "there's several levels of review in these files. . . I don't know what their rationale was." [AR 62-63.] The ALJ noted that the details of plaintiff's reapplication were "not on [his] cover sheet" "[s]o somebody didn't delve into that." [AR 63.] The ALJ said that he will "take a look at that also." *Id.*

The ALJ said that he was going to order plaintiff to be examined by an internal medicine physician, which will include her orthopedic problem. [AR 63.] He also noted he was going to order plaintiff to get a psychiatric clinical exam. *Id.*

### 2. *Vocational Expert's Testimony.*

Mr. Stock, a vocational expert, answered two hypothetical questions posed by the ALJ. First, Mr. Stock testified that plaintiff could not perform any of her past work in light of plaintiff's age, education, prior work experience, and her restriction "to a light range of work, no work on unprotected heights, no work on dangerous machinery, no ladders, occasional stairs and ramps, occasional stopping and bending, occasional lifting above

shoulder level, no sustained, intense interaction with the public, coworkers, or supervisors." [AR 57-58.] Mr. Stock opined that plaintiff could perform other work including a mail clerk, laundry worker, or silver wrapper. [AR 58.]

The second hypothetical question posed by the ALJ included the same restrictions as the first hypothetical, but also provided that the person would have to be restricted to a sedentary range of work. [AR 58.] The vocational expert opined that plaintiff could perform the following work with these restrictions: (1) a leaf tier; or (2) a press clippings cuttings-paster." *Id.*

## IV. *The ALJ's Five Step Disability Analysis.*

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 CFR § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d at 1193-1194.

At step one, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 CFR § 404.1520(a)(4)(I). "Substantial gainful activity is work activity that is both substantial and gainful." 20 CFR § 416.972. Here, the ALJ concluded plaintiff had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date of plaintiff's alleged impairments. [AR 23.]

At step two, the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of Social Security regulations. 20 CFR § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). For example, a slight abnormality or combination of slight abnormalities that only have a minimal effect on the applicant's ability to perform basic work activities will not be considered a "severe" impairment. *Webb v. Barnhart*, 433

F.3d 683, 686 (9th Cir. 2005). Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 CFR § 404.1521(b)(1)-(6). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Webb v. Barnhart*, 433 F.3d at 686.

Here, at step two, the ALJ concluded that plaintiff has the following severe impairments: history of a pars defect at L5-S1 of the lumbar spine; history of migraine headaches; history of herniated disc thoracic spine; alcohol dependence; and depression/mood disorder. [AR 23.] The ALJ also found that these impairments "cause more than minimal limitations on the claimant's ability to perform basic work activities." *Id.*

If there is a severe impairment, the ALJ must then determine at step three whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 CFR § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* In this case, the ALJ concluded at step three that plaintiff's impairments or combination of impairments did not meet or equal a listed impairment. [AR 23.] As a result, the ALJ concluded plaintiff was not disabled based on medical considerations alone. *Id.*

If an impairment does not meet or equal a Listing, the ALJ must make a step four determination of the claimant's residual functional capacity based on all impairments, including impairments that are not severe. 20 CFR § 404.1520(e), § 404.1545(a)(2). "Residual functional capacity" is "the most [an applicant] can still do despite [his or her] limitations." 20 CFR § 404.1545(a)(1). The ALJ must determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 CFR § 404.1520(a)(4)(iv).

If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 CFR § 404.1520(a)(4)(v). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). The ALJ must consider all of plaintiff's medically determinable impairments, including any pain that could "cause a limitation of function" and any impairments that were not "severe," and then determine plaintiff's residual functional capacity to perform other work in the national economy. 20 CFR §§ 404.1520; 404.1545; 416.929. "In determining [the claimant's] residual functional capacity, the ALJ must consider whether the aggregate of [the claimant's] mental and physical impairments may so incapacitate him that he is unable to perform available work." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997), as *amended on reh'g* (Sept. 17, 1997). As noted above, "residual functional capacity" is "the most [an applicant] can still do despite [his or her] limitations." 20 CFR § 404.1545(a)(1).

Here, the ALJ acknowledged at step four that plaintiff was unable to perform any past relevant work. [AR 28.] Considering the totality of plaintiff's symptoms and pain, the ALJ concluded at step five that plaintiff has the residual functional capacity to make a "successful adjustment to other work that exists in significant numbers in the national economy." [AR 29.] The ALJ cited the vocational expert's testimony regarding representative occupations for plaintiff including, for example, (1) mail clerk; (2) domestic laundry worker; (3) silver wrapper; (4) leaf tier; (5) addresser; or (6) press clippings cutter/paster. *Id.* In reaching this determination, the ALJ concluded that plaintiff is "not disabled" under the framework of Medical-Vocational Rule 202.21. *Id.*

The ALJ considered the testimony of the vocational expert and plaintiff's age, education, work experience, and residual functional capacity. [AR 28]. In addition, the ALJ specifically considered plaintiff's testimony regarding "migraine headaches, depression and PTSD since 2001, a unilateral pars defect, and stress incontinence." [AR 25.] However, the ALJ reasoned that plaintiff's "statements concerning the intensity,

12

3:16-CV-00700-MMA-KSC

persistence and limiting effects of her symptoms" were "not fully credible." *Id.* The ALJ cited other objective medical evidence in the record, including plaintiff's disability findings by the Department of Veterans Affairs, which he found "fail[ed] to provide strong support for the claimant's allegations of disabling symptoms and limitations." *Id.* Regarding the disability findings by the Department of Veterans Affairs, the ALJ noted as follows:

> A decision by any agency about disability is based on that agency's rules and is not binding on the Social Security Administration (20 C.F.R. 404.1504 and 416.904). Accordingly, although I considered the medical findings and related treatment within the VA records, I accord the disability ratings from the VA agency no weight.

[AR 25.]

## V. *Discussion.*

### A. *Substantial Evidence Standard.*

In her Motion for Summary Judgment, plaintiff argues that the Court should reverse the ALJ's decision and award benefits, because the ALJ failed to articulate "persuasive, specific and valid reasons" for rejecting the VA's disability rating. [Doc. No. 16, at pp. 8-9.] Defendant argues that the Court should affirm the ALJ's decision because the ALJ adequately considered the VA's disability ratings and disability decisions by other agencies are not binding upon the Commissioner. [Doc. No. 22-1, at pp. 2-8.]

It is well established in the Ninth Circuit that "an ALJ must ordinarily give great weight to a VA determination of disability." *Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 695 (9th Cir. 2009) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2003) (reversing a denial of benefits because the ALJ "failed to consider the VA finding and did not mention it in his opinion")). [A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical results, 20 CFR § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McCartey*, 298 F.3d at 1076. In reaching this holding, the Ninth Circuit relied on "the marked similarity between these two federal disability programs. Both programs serve the same governmental purpose – providing benefits to those unable to work because of a serious

disability. ***Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims.*** *Id.* (emphasis added). However, because the criteria for determining disability are not identical, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

In *Valentine*, the VA rated plaintiff 100 percent disabled while his case was pending before the ALJ. 574 F.3d at 694. Notwithstanding the VA's disability rating, the Ninth Circuit court found that the ALJ provided "specific and legitimate reasons that [were] supported by substantial evidence in the record" to reject the VA's disability rating. *Id.* at 695. The Ninth Circuit court noted that the ALJ specifically stated in her opinion that "the VA's determination was not based on a comprehensive evaluation of the evidence available to [her]." *Id.* The court concluded that "the acquisition of new evidence or a properly justified reevaluation of old evidence constitutes a persuasive, specific, and valid reason . . . supported by the record." *Id.* (internal citation omitted).

Similarly, in *Davis v. Astrue*, No. 10cv1732-BEN-NLS, 2011 WL 3740365, at *9 (S.D. Cal. July 29, 2011), the court affirmed the ALJ's decision that the claimant could perform sedentary work notwithstanding his VA disability rating of 100% because "the ALJ independently addressed and assessed the evidentiary basis for the VA rating as required." (internal citation omitted). The court reasoned:

> The ALJ explicitly mentioned the 100 percent disabled rating when issuing his decision and noted that disability ratings between the two agencies do not necessarily have the same meaning. The ALJ provided a specific example of John McCain, who is 100 percent disabled according to the VA, but has proven to be capable of performing work. Here, while Plaintiff's VA disability rating is 100 percent, according to the ALJ he is capable of performing sedentary work, which is the lowest exertional level of work as defined by the SSA. While the ALJ cannot reject the VA rating solely because the SSA and VA's governing rules differ, the difference in rules was not the sole basis of the rejection. The

> ALJ reviewed the evidentiary basis for the VA's rating and addressed it three times in his order. . . . [T]he ALJ appropriately considered the VA rating and gave persuasive, specific and valid reasons for affording less weight to the VA's determination of disability."

*Id.* (internal citation omitted).

It is insufficient for an ALJ to impliedly reject a VA disability rating on the basis that the VA and SSA criteria for determining disability are not identical. *See, e.g., Courtney v. Colvin,* 2016 WL 3869844, at *2–*3 (E.D. Cal. July 15, 2016); *Hamblin v. Astrue,* 2009 WL 113858, at *2 (C.D. Cal. Jan. 14, 2009) (stating that "[t]he Ninth Circuit has made clear what is required to discount a VA rating – silently, or impliedly, rejecting it does not meet this standard").

In *Courtney v. Colvin,* 2016 WL 3869844, at *1 (E.D. Cal. July 15, 2016), the court reversed the Social Security Commissioner's decision and remanded the case for further administrative proceedings. Plaintiff's "sole contention [was] that the ALJ failed to give sufficient reasons for rejecting a determination by the Department of Veterans Affairs ("VA") that plaintiff is disabled." *Id.* The ALJ noted that the "VA and [SSA] criteria for determining disability are not identical," and that he may give "less weight to a VA disability rating," so long as he provides "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* at *2. The ALJ claimed that he "considered and included most of the identified impairments found in the rating decision and [had] considered such impairments in formulating [plaintiff's] maximum residual functional capacity." *Id.* However, the District Court found "[t]he ALJ's discussion of the VA disability rating was insufficient" because although "the ALJ purported to have read and considered the VA's disability determination, his RFC assessment implicitly rejected the VA's finding that plaintiff's combined mental and physical impairments precluded employment." *Id.* The District Court further explained "the error was not harmless because the ALJ's rejection of the VA disability rating, which is entitled to 'great weight' under

*McCartey*, was not inconsequential to the ultimate nondisability determination." *Id.* (internal citation omitted).

Here, the ALJ purports to have "considered the medical findings and related treatment within the VA records," but the ALJ "accord[ed] the disability ratings from the VA agency no weight." [AR 25.] The ALJ, however, acknowledged in his written decision that plaintiff The ALJ implicitly rejected the VA's finding of plaintiff's service-connected disability noting that "[a] decision by any agency about disability is based on that agency's rules and is not binding on the Social Security Administration." *Id.* The ALJ erred in giving the disability ratings from the VA "no weight" because Ninth Circuit precedent requires the ALJ to give "great weight to a VA determination of disability." *McCartey,* 298, F.3d at 1075. While the ALJ could have given "less weight" to the VA disability ratings if he had given "persuasive, specific, valid reasons for doing so that are supported by the record," the ALJ failed to provide any reasons for rejecting the VA's disability ratings of plaintiff. *Id.*

Defendant asserts in the Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment that "the VA only considered evidence up to April 2013 and June 2013, respectively, in issuing its migraine and cystitis ratings." [Doc. No. 20-1, at p. 9.] Defendant cites *Valentine, supra,* in support of its contention that "the VA did not consider all the evidence of record before the ALJ, which supported his decision to discount the VA ratings and find Plaintiff was not disabled under the Social Security Act." *Id.* However, this reason was not articulated by the ALJ in his decision. While a reviewing court may draw specific and legitimate inferences from an ALJ's decision, a court cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-1226 (9th Cir. 2009) (stating that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hac rationalizations that attempt to intuit what the adjudicator may have been thinking"); *Stout v. Comm'r, Social*

*Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Accordingly, the Commissioner's post hoc rationalizations do not remedy the ALJ's legal error in failing to articulate persuasive, specific, valid reasons for rejecting the VA disability ratings.

Under the circumstances presented, it was not enough for the ALJ to give "no weight" to the VA's disability determinations. These detailed findings and conclusions about plaintiff's medical conditions were not dispositive, as the ALJ stated in this decision, but they were entitled to significant weight.

## VI. *Conclusion.*

A decision to remand for further investigation and development of the record is appropriate when outstanding issues remain that must be resolved before a determination of disability can be made. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1106-1107 (9th Cir. 2014); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal citation omitted). Based on the foregoing, this Court concludes that a remand for further administrative proceedings is the proper remedy. While a VA disability rating ordinarily is entitled to great weight, it "does not necessarily compel the SSA to reach an identical result," and it is not clear that social security disability benefits must be awarded in this case. *Hiler v. Astrue*, 687 F.3d 1208, 1211-1212 (9th Cir. 2012) (holding that a remand for further administrative proceedings is appropriate where the ALJ deviated from the claimant's VA disability ratings and gave no reason for doing so). On remand, the ALJ shall develop the record as needed and issue a new decision containing appropriate findings consistent with this Report and Recommendation.

/ / /

/ / /

Based on the foregoing, **IT IS HEREBY RECOMMENDED THAT THE DISTRICT COURT**:

1. **GRANT** plaintiff's Motion for Summary Judgment to the extent it seeks a remand for further administrative proceedings [Doc. No. 16];
2. **DENY** defendant's Cross-Motion for Summary Judgment [Doc. No. 19];
3. **REMAND** the matter to the SSA for further consideration, investigation, and development of the record consistent with this Report and Recommendation; and,
4. **ENTER** a judgment in plaintiff's favor remanding this matter for further administrative proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d). Within ***fourteen (14) days*** after being served with a copy of this Report and Recommendation, "any party may serve and file written objections." 28 U.S.C. § 636(b)(1)(B)&(C). The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir.1991).

**IT IS SO ORDERED.**

Dated: May 12, 2017

Hon. Karen S. Crawford
United States Magistrate Judge